UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT LEWIS SMITH,

          Plaintiff,

    v.

RAMESH DHARAWAT, *et al*.,

          Defendants.

Case No.   2:24-cv-0118-JDP (P)

ORDER; FINDINGS AND
RECOMMENDATIONS

Plaintiff, a state prisoner, brought this action under section 1983 alleging that defendants violated his Eighth Amendment rights by failing to provide him with adequate medical care in connection with the installation and maintenance of his pacemaker.  Defendants have filed two separate motions for summary judgment.  The first is filed on behalf of defendant Nnaji.  ECF No. 41.  The second is filed on behalf of defendants Walter Chien ("Chien") and Rhamesh Dharawat ("Dharawat").  ECF No. 42.  Plaintiff has opposed both motions, ECF Nos. 47 & 56, and defendants have filed their respective replies, ECF Nos. 48 & 59.  For the reasons stated hereafter, I recommend that both motions be granted.

1

Legal Standards

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Rule 56 allows a court to grant summary adjudication, also known as partial summary judgment, when there is no genuine issue of material fact as to a claim or a portion of that claim. *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citations to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) argument showing that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider other materials in the record not cited to by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins.*

2

*Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (citing *Celotex Corp.,* 477 U.S. at 323).  The non-moving party must "show more than the mere existence of a scintilla of evidence."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated there to be no genuine issue of material fact and that judgment is appropriate as a matter of law.  *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).  "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence."  *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

I.     Defendant Nnaji's Motion for Summary Judgment

A.     Claims against Nnaji

Plaintiff alleges that Nnaji, a registered nurse at California State Prison Sacramento ("CSP-SAC"), violated his Eighth Amendment right to adequate medical care by failing to provide appropriate care for his wound after pacemaker surgery.  ECF No. 1 at 19.  He claims that, on May 3, 2023, after he returned from surgery at St. Joseph's Medical Center, Nnaji "pull[ed] and yank[ed]" on his bandage dressing, causing his sutures, skin glue, and adhesive strips to come undone.  *Id.* at 19-20.  This action allegedly opened the surgical wound and exposed the pacemaker, causing it to shift around.  *Id.* at 20.

B.      Analysis

Defendant Nnaji states that, upon plaintiff's return to CSP-SAC on May 3, 2023, after pacemaker surgery, he refused to be examined by a nurse in the prison's triage and treatment area.  This is confirmed by a refusal of examination/treatment document signed by plaintiff.  ECF No. 41-5 at 16.  Nnaji met with plaintiff the next day to perform wound care but, at the time, the prison had not yet received plaintiff's discharge paperwork or post-surgery care instructions from the hospital where his pacemaker operation was performed.  ECF No. 41-4 at 5, 7; ECF No. 41-5 at 3 ¶ 8.  Defendant Nnaji states that nothing out of the ordinary occurred during the dressing change on May 4, 2023, and that plaintiff's sutures remained intact.  ECF No. 41-4 at 2 ¶ 5.  Plaintiff refused to be seen by Nnaji the next day, but was examined by A. Khan, a physician, who attests that plaintiff appeared well and was not in any distress.  ECF No. 41-5 at 3 ¶ 10.  An examination of the wound site indicated that the sutures were intact and the wound "was not bleeding, not gaping, and overall looked good."  *Id.* at 4 ¶ 10.  The medical records do indicate that Nnaji, perhaps mistakenly, removed "Steri-Strips" from the wound site during the May 4 encounter, "because he was of the impression that visit was to change dressing and noted dried cloted (sic) blood under the Steri-Strip."  *Id.* at 23.  Dr. Khan recommended that Steri-Strips be put back on, but plaintiff initially refused, only consenting to the placement of the strips after being told that his cardiologist was recommending the same.  *Id.* at 23-24.

I find, based on the foregoing, that defendant Nnaji's motion for summary judgment should be granted.  Crucially, an Eighth Amendment deliberate indifference claim requires more than simple error or medical negligence.  "Deliberate indifference is something more than mere negligence but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015) (citation and internal quotation marks omitted).  Courts have described the requisite standard as something like "reckless disregard."  *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("[D]eliberate indifference is equivalent to reckless disregard and describes a state of mind more blameworthy than negligence, but is something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result . . . .").  Here, records indicate that, at worst, defendant

4

Nnaji mistakenly believed that removal of plaintiff's "Steri-Strips" was warranted, but this mistake does not amount to reckless disregard because there were not yet specific orders to the contrary in the system, and because plaintiff had been called for a wound and dressing change. ECF No. 41-4 at 2 ¶ 2. Neither is there evidence that the removal of the "Steri-Strips" by Nnaji harmed plaintiff. *See Jett v. Penner*, 439 F.3d 1091, 1093 (9th Cir. 2006) (noting that an Eighth Amendment deliberate indifference to medical needs claim requires a showing that the defendant's indifference caused the plaintiff harm). As noted by the declaration of Dr. Khan, plaintiff's wound looked "pretty good" the day after his encounter with Nnaji, and he consented to replacement of the strips at Khan's recommendation. ECF No. 41-5 at 23-24. Additionally, the pacemaker itself was noted to be in the "appropriate location." *Id.* at 23. Finally, a prison grievance response attached to plaintiff's opposition notes that a medical examination on May 9, 2023, revealed no issues with the wound site. ECF No. 47-2 at 22. A follow-up with the cardiologist in June 2023 indicated that the pacemaker was functioning normally. *Id.*

Plaintiff's opposition is insufficient to defeat defendant Nnaji's motion. It is, in essence, nothing more than a recitation of his allegations against this defendant, and his claims are contradicted by the medical records. For instance, plaintiff claims that his pacemaker was "protruding from the incision site" after his encounter with Nnaji, but he does not explain why, the next day, Khan determined that the pacemaker was in the "appropriate location," and the wound looked "pretty good." Plaintiff does attach a medical record from December 2023, that notes that a "generator change" operation was complicated by "poor wound care in prison," but this notation, made months after the procedures at issue in this case, is not directly linked to Nnaji's actions and it is impossible to tell what "poor wound care" it is referring to. *Id.* at 8.

II.    Defendant Chien and Dharawat's Motion for Summary Judgment

A.    Claims against Defendants Chien and Dharawat

It is difficult to grasp the specific claims plaintiff brings against defendants Chien, a physician electro physiologist, and Dharawat, a cardiologist. After being asked about his specific claims against the defendants in written discovery, plaintiff provided lengthy, rambling responses, alleging inadequacies in care dating from 2013 to 2023. ECF No. 42-5 at 159-70; 186-87. At

bottom, it appears that plaintiff's claims against these physician defendants rest on: (1) care provided in 2013, when plaintiff alleges that defendants implanted a pacemaker which was subject to a recall; and (2) allegations that defendants improperly installed a new pacemaker generator and leads in 2013 and 2023. *Id.* at 82 (pages 19-21 of the deposition); ECF No. 1 at 17-18.

B.      Analysis

In support of their motion, defendants' have provided the declaration of Byron K. Lee, a physician specializing in cardiology and cardiac electrophysiology. ECF No. 42-4 at 1. Dr. Lee has reviewed the relevant medical files and discovery documents and, as explained below, opines that defendants provided plaintiff with the appropriate standard of care.

First, Dr. Lee states that the pacemaker recall referenced by plaintiff did not affect the device he received in 2013. *Id.* at 10 ¶ 1. He notes that the recall affecting the relevant model of pacemakers, those from the "Accent DR 2210 series," was resolved in April 2012, nearly a year before plaintiff's 2013 procedure.[1]  *Id.*  It is also Dr. Lee's judgment that keeping the leads from the earlier, 2007 pacemaker met the standard of care because they were still properly functioning. *Id.* Second, Dr. Lee opines that the operation in May 2023 was also medically adequate. He states that the risk of replacing the ventricular lead, still active and functioning from 2007, outweighed any potential benefit. *Id.* at 10 ¶ 3. Finally, while it is unclear whether of any of plaintiff's claims implicate this period, Dr. Lee opines that defendants' care for plaintiff's palpitations and pacemaker management between 2014 and 2023 was also compliant with the standard of care. *Id.* at 10 ¶ 2.

Plaintiff's lengthy, ill-organized opposition does not meaningfully address defendants'

---

[1] Defendants request that the court take judicial notice of two United States Department of Health and Human Services, Food and Drug Administration, Class 2 Device Recalls for pacemaker devices. ECF No. 42-6. The first relates "Accent DR Model PM2110 and PM2210" and was terminated on April 10, 2012. ECF No. 42-6 at 4. The second relates to a recall for the "Assurity Model PM2272," which was terminated in July 2020. *Id.* at 9. The request for judicial notice is granted. *See, e.g.*, *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1126, n.1 (N.D. Cal. 2013) (noting that "[t]he Court may take judicial notice of materials available on government agency websites" and taking notice of a 2009 Food and Drug Administration guidance document).

motion.  Instead, he offers over three-hundred pages of unsupported allegations and uncontextualized medical records.  *See* ECF No. 56.  His vague and conclusory claims that the records on which defendants rely are fabricated, *id.* at 31, are insufficient to create a genuine issue of material fact.  *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."); *see also Bond v. Knoll*, No. EDCV 11-1929 PSG(JC), 2014 U.S. Dist. LEXIS 172504, *23 (C.D. Cal. Nov. 18, 2024) ("[P]laintiff's speculation that defendants fabricated all of their evidence, is insufficient to raise a genuine dispute of material fact to defeat summary judgment.") (internal citations omitted).  Most importantly, nothing in plaintiff's opposition addresses Dr. Lee's expert opinion that defendants' care was adequate.  *See Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988) ("When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence.").  I understand that obtaining his own expert testimony is almost certainly beyond plaintiff's means, but his failure to point toward any contradictory evidence or to provide any substantive, intelligible argument against summary judgment convinces me that defendants' motion should be granted.

Accordingly, the Clerk of Court is ORDERED to assign a district judge to this action.

Further, I RECOMMEND that defendants' motions for summary judgment, ECF Nos. 41 & 42, be GRANTED and judgment be entered in their favor.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within fourteen days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

1991).

IT IS SO ORDERED.

Dated:   May 29, 2026

_____
JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE